IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DERRICK A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25CV441 |
| | ) | |
| FRANK BISIGNANO,[1] Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Derrick A. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on August 3, 2021, alleging a disability onset date of July 20, 2021 in both applications. (Tr. at 182, 362-370.)[2] His applications were denied initially (Tr. at 129-54, 207-16) and upon reconsideration (Tr. at 155-

[1] The United States Senate confirmed Frank Bisignano as the Commissioner of Social Security on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #4].

78, 224-32). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 235-36.) On May 19, 2023, Plaintiff, along with his attorney, attended the subsequent telephonic hearing, at which both Plaintiff and an impartial vocational expert testified. (Tr. at 182, 73-101.) Following this hearing, on March 7, 2024, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 194.) However, on May 16, 2024, the Appeals Council remanded the matter for a new hearing. (Tr. at 201-06.) Accordingly, Plaintiff attended his second telephonic administrative hearing on October 8, 2024, again represented by an attorney. (Tr. at 10, 40-72.) Prior to the hearing, Plaintiff amended his alleged onset date to April 18, 2022. (Tr. at 10, 45-47.)

Following this hearing, the ALJ again concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 24), and on April 1, 2025, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since April 18, 2022, his amended alleged onset date. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 13.) At step two of the sequential evaluation process, the ALJ determined that Plaintiff suffered from the following severe impairments:

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

> type I diabetes mellitus; left peroneal mononeuropathy; post-concussive syndrome with headache syndrome/migraines; complex regional pain syndrome; chronic pain syndrome; neuropathy; anxiety; depression; and degenerative disc disease[.]

(Tr. at 13.) The ALJ determined at step three that none of the impairments identified at step two, individually or in combination, met or equaled a disability listing. (Tr. at 13.) He therefore assessed Plaintiff's RFC and determined that Plaintiff could perform light work with the following, non-exertional limitations:

> [Plaintiff] can frequently use ramps and stairs, balance, stoop, kneel, and crouch. He can have no exposure to workplace hazards, including unprotected heights or dangerous machinery. He can have no exposure to extreme levels of heat or cold temperatures or loud noise levels. He can perform no production pace work such as assembly line work or piece rate work. He can tolerate frequent contact with supervisors and co-workers, but only occasional contact with the public. He can adapt to occasional changes in the workplace setting. In addition to normal breaks, he would be off-task 5% of the time.

(Tr. at 15.) At step four of the analysis, the ALJ determined that Plaintiff had no past relevant work. (Tr. at 23.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in significant numbers in the national economy. (Tr. at 23-24.) The ALJ therefore concluded that Plaintiff was not disabled under the Act. (Tr. at 24.)

Plaintiff now contends that the ALJ failed to adequately account for diabetes-related fatigue when assessing Plaintiff's RFC. However, the ALJ specifically acknowledged that at the first hearing, Plaintiff testified that his "fluctuating blood sugars cause fatigue." (Tr. at 16, 85.) The ALJ further acknowledged that Plaintiff testified that his diabetes resulted in "episodes of hyperglycemia resulting in . . . lethargy." (Tr. at 16, 47, 55.) The ALJ then considered Plaintiff's diabetes-related limitations at length.

With respect to the medical treatment record, the ALJ noted that there was "no evidence of consistent treatment" for diabetes since the amended alleged onset date. (Tr. at 17.) Nevertheless, the ALJ acknowledged that records from 2024 reflected that Plaintiff "continued to experience high blood sugars and elevated hemoglobin A1C during 2024, which accounts for some continued fatigue and weakness." (Tr. at 17.) The ALJ noted that Plaintiff "received generally conservative treatment" for his diabetes, and "[h]is primary treatment modality is routine medication management and continued recommendations for lifestyle changes." (Tr. at 17.) The ALJ further noted that "[d]uring 2024, [Plaintiff] was noted to have difficulty controlling brittle type-I diabetes mellitus, including difficulty adjusting to new medications." (Tr. at 17.) The ALJ concluded that,

> [w]hile [Plaintiff] did eventually adjust to [his] new diabetes medication and delivery method, his blood sugar levels have never been completely controlled in such . . . a way that would result in no or minimal impact. [Plaintiff's] diabetes would continue to result in the need for a reduced overall exertional level and protection from workplace hazards as well as extremes of temperatures, as reflected in the [RFC].

(Tr. at 17-18.)

The ALJ further explained that, in making the above findings, he credited Plaintiff's subjective complaints, including fatigue, by including RFC limitations consistent with the prior final administrative determination from 2021, and including RFC limitations more extensive than those set out in the majority of the medical opinion evidence. (Tr. at 18-23.) First, with respect to the prior final determination, the ALJ cited to the prior decision dated February 3, 2021. (Tr. at 18-19.) That prior decision reflects that Plaintiff similarly raised a claim of disability due to poorly-controlled diabetes, with "blood sugars rang[ing] from 35 to 450" and medical records reflected ongoing issues with his insulin pump and a worsening A1C. (Tr. at

111, 113, 115, 117.) The RFC in that case similarly limited Plaintiff to light work with no concentrated exposure to hazards such as unprotected heights and moving machinery, and with additional mental limitations to address his depression and anxiety. (Tr. at 110.) The ALJ in the present case found that Plaintiff's "condition has not significantly improved or deteriorated" and that the decision "remains generally consistent with the overall records." (Tr. at 19.) The ALJ therefore adopted the prior RFC as related to Plaintiff's diabetes.

The ALJ also considered the medical records and opinion evidence since the prior ALJ decision. As noted by the ALJ, both State agency medical consultants opined that Plaintiff could perform medium exertional level work and should avoid concentrated exposure to hazards. (Tr. at 19, 136-38, 161-63.) The ALJ found that these records were only partially persuasive, as they did not have the benefit of the entire medical record or Plaintiff's testimony, so the ALJ adopted even greater limitations. (Tr. at 20.) Similarly, the physical consultative examiner, Lauren Flannagan, PA-C, found, based on the physical examination, that Plaintiff had no physical limitations whatsoever. (Tr. at 21, 2029-35.) However, PA Flannagan noted that Plaintiff would need to "follow up with [an] endocrinologist" to address any diabetes-related functional limitations. (Tr. at 2035.) As a result, a medical expert endocrinologist was consulted and was asked to review Plaintiff's records. (Tr. at 2254.) Thus, most importantly here, the ALJ considered the opinion of the medical expert, Dr. Abosede Olatoyosi Adoshun, who was the endocrinologist specifically consulted to review Plaintiff's medical records and opine on any limitations and issues related to his diabetes. (Tr. at 2254.) As summarized by the ALJ:

> Medical expert Abosede Olatoyosi Adoshun, M.D. opined in a questionnaire of December 2023 that the claimants diabetic condition limits him lifting and

> carrying up to 50 pounds continuously and up to 100 pounds frequently; sitting, standing, and walking up to 8 hours at a time for a total of 8 hours in an 8-hour workday; continuously reaching, handling, fingering, feeling, pushing, pulling, and operating foot controls; continuously climbing stairs, ramps, ladders, or scaffolds; continuously balancing, stooping, kneeling, crouching, and crawling; occasionally working at unprotected heights, in humidity and wetness, around dust, odors, fumes, and pulmonary irritants, and in extreme cold and extreme heat; frequently working in vibrations; continuously working around moving mechanical parts and operating a motor vehicle; and working in moderate noise levels. He stated that the claimant had a history of diabetes mellitus type I which was sub-optimally controlled with no documented complications except for neuropathy. He opined there was no documentation of impairment associated with neuropathy. In his opinion, there was no impairment attributable to his diabetes.

(Tr. at 22-23, 2254-64.)

The ALJ found that Dr. Adoshun's opinions were "partially persuasive as they reflect the physical findings throughout the record that show mostly normal physical functioning." (Tr. at 23.) The ALJ nevertheless concluded that Dr. Adoshun's opinions did not sufficiently address Plaintiff's diabetes-related "pain and fatigue," and the ALJ therefore specifically included "a broader range and greater degree of limitation" to address the diabetes-related pain and fatigue. (Tr. at 23.) These specific limitations included a "reduced overall exertional level" to light work, and "protection from workplace hazards as well as extremes of temperatures." (Tr. at 17, 18.)[5] The ALJ further found that "a more restrictive residual functional capacity is not warranted due to the medical findings outlined throughout the record." (Tr. at 18.) In short, the ALJ clearly recognized that Plaintiff experienced some degree of fatigue along with other symptoms of his type-I diabetes, and he included multiple

[5] This limitation to light work to address diabetes-related fatigue is consistent with Plaintiff's testimony that more strenuous manual labor such as pushing a 40 or 50 pound spreader resulted in greater blood sugar drops, with the fluctuations causing fatigue, as well as the medical records, which likewise note that he has "had a number of jobs that require manual labor which increases variability and increases hypo[glycemia]." (Tr. at 50, 60, 2825, 2839-40, 2849.)

RFC limitations to account for these symptoms, including a reduced exertional level and protection from workplace hazards and environmental extremes, specifically to account for Plaintiff's diabetes-related fatigue. The ALJ rejected Plaintiff's claims that his diabetes resulted in additional limitations, and substantial evidence supports that determination given the opinion evidence and medical records, and it is not the Court's role to re-weigh that evidence.

Plaintiff nevertheless contends that the ALJ failed to account for Plaintiff's testimony at the first hearing "that he could not work [primarily] because he would miss work due to sleeping," and that "he has periods where he can sleep for a couple of days and this happens every other week." (Pl.'s Br. [Doc. #11] at 5) (citing Tr. at 84, 88-89). However, a review of that hearing transcript further reveals that, when asked which of his impairments caused his excessive sleeping, Plaintiff responded, "Mental health. I don't want to face the day when I see it, and that's the state of depression." (Tr. at 88-89.) Plaintiff further testified that there was nothing that seemed to trigger those sleeping episodes and that he "shouldn't be, you know, sad" but that he couldn't "open up or nothing." (Tr. at 94.) In his decision, the ALJ acknowledged that Plaintiff testified at the first hearing that "[h]e has times when he sleeps for 2 to 3 days at a time due to depression." (Tr. at 16.) Similarly, at the hearing on remand, Plaintiff's attorney specifically argued that Plaintiff experienced persistent "depression which can cause him to frequently sleep for multiple days in a row." (Tr. at 46.) Plaintiff also testified that he would sleep for several days so that he didn't "have to feel the depression." (Tr. at 65.) The ALJ likewise acknowledged that Plaintiff "alleged panic attacks and symptoms of depression including sadness, feelings of hopelessness, irritability, and periods of excessive sleep." (Tr. at 16.)

Plaintiff's brief also chronicles his fatigue complaints to providers, primarily citing to the records of his treating psychiatrist, Dr. Rupinder Kaur. (See Pl.'s Br. at 6-8.) Dr. Kaur was only source to opine a degree of limitation beyond that found in the RFC. Dr. Kaur served as Plaintiff's treating psychiatrist, and his records indicate that he served in that capacity from October 2016 to 2024. Dr. Kaur opined that, from a mental health standpoint, Plaintiff was unable to hold gainful employment. (See Tr. at 21, 2019, 2268.) In making this finding, Dr. Kaur noted that Plaintiff's poorly controlled diabetes "complicates his depression," including by limiting the treatment options since some medications are prone to increase blood sugar. (Tr. at 21, 2019.) However, Dr. Kaur did not cite fatigue from Plaintiff's diabetes as the basis for any of the extreme mental limitations he included in his opinions, and instead pointed to Plaintiffs major depressive disorder, social anxiety disorder, and panic disorder, noting "extreme fatigue" and "excessive sleep," and with almost no ability to function (Tr. at 2268, 2112-13, 21.) The ALJ ultimately found Dr. Kaur's opinions to be "of limited persuasive value," explaining that

> the opined limitations are well out of proportion to the source's own course of treatment, contrary to the objective findings during the examinations and contrary to mental status exam findings during Dr. Kaur's exams as well as other examiner's mental status observations. There have been no recent mental health related hospitalizations, no episodes of decompensation, no intensive outpatient care. While the claimant does carry a consistent diagnosis of depression and anxiety disorders, he has not attended counseling or therapy on a regular basis. He is able to manage living independently and medical records note that he helps provide care for his grandparents. He can perform his activities of daily living, cook, clean, and manage his medications. He has a high school education, and he obtained a driver's license. He also has a history of work at the skilled, semi-skilled and unskilled level with no evidence of a decline in his intellectual function or cognition during the relevant period.

(Tr. at 22.) The ALJ also found persuasive the opinion of state agency psychologist Dr. Jacquelyn Harrison, because it "reflects the evidence of record and adequately accounts for [Plaintiff's] mental and neurological symptoms." (Tr. at 20.) In addition, as discussed above, the ALJ also relied on the prior February 3, 2021 administrative decision. (Tr. at 18-19.) That decision likewise reflects that Plaintiff testified that his "anxiety affected his sleep" including "sleeping for days." (Tr. at 116.) That decision nevertheless found that Plaintiff was capable of light work with specific non-exertional limitations (Tr. at 18-19, 110-18), and the ALJ in the present case found that Plaintiff's condition had not significantly deteriorated (Tr. at 19).

The ALJ in this case nevertheless found that Plaintiff's "symptoms are exacerbated by stress, and it is reasonable to preclude production pace work and to limit his contact with others." (Tr. at 22.) Because "[a]djusting to new situations could also exacerbate [Plaintiff's] symptoms," the ALJ "also limited him to only occasional changes in the workplace setting." (Tr. at 22.) Thus, the ALJ included specific limitations in the RFC to address his mental impairments, but found that Plaintiff's "allegations of greater limitations" are "not consistent with the overall evidence of record." (Tr. at 23.)

Notably, Plaintiff does not challenge the ALJ's assessment of the medical opinion evidence, including the conclusion that Dr. Kaur's opinions were unpersuasive. Plaintiff also does not challenge the assessment of his mental limitations in the RFC. Instead, he contends that the ALJ did not adequately explain the omission of diabetes-related fatigue limitations in the RFC. As set out at length above, this contention clearly fails. The ALJ gave Plaintiff every benefit of the doubt, expressly attributing limitations to light exertional level work, no

exposure to workplace hazards, and no exposure to extreme levels of heat or cold in direct response to Plaintiff's diabetes symptoms, specifically fatigue. (Tr. at 17-18, 22-23.)

To the extent that Plaintiff described more extreme limitations, particularly as to sleeping 2-3 days at a time, the record, and most prominently the hearing transcripts, reflect that Plaintiff attributed these symptoms to his mental impairments, and the ALJ specifically acknowledged and considered these allegations, including Dr. Kaur's related records and opinions. The ALJ determined that Plaintiff's subjective complaints to Dr. Kaur were grossly out of line with Plaintiff's sparse and conservative treatment record, his daily activities, and his work history, all of which indicated that Plaintiff remained able to function at a much higher level than alleged despite his long-term diagnoses of type I diabetes, anxiety, and depression. The ALJ further explained that, to the extent that Plaintiff's mental and physical symptoms were at all supported by the record as a whole, he included limitations to the full extent warranted. These limitations expressly include work at an exertional level below that indicated by the state agency physicians, the consultative examiner, and the medical expert endocrinologist, and also included complete preclusion of workplace hazards and temperature extremes, which, again, were beyond the limitations included in that opinion evidence. Moreover, despite discounting Dr. Kaur's finding of debilitating mental limitations, the ALJ chose to include extensive mental limitations in the RFC based almost exclusively on Plaintiff's subjective allegations of stress and its effects. (Tr. at 14-15, 16, 1719, 21-22.) In light of these findings, the Court finds no basis for remand.

IT IS THEREFORE ORDERED that the Commissioner's decision finding of no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #11] is DENIED, that

Defendant's Dispositive Brief [Doc. #12] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 29th day of September, 2026.

Joi Elizabeth Peake
United States Magistrate Judge